IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EMMIS OPERATING COMPANY, | ) | Case No. 1:06-cv-0920-LJM-WTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CBS RADIO INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

Defendant CBS Radio Inc. ("CBS Radio"), by counsel, respectfully submits this Reply in

Support of its Motion to Disqualify Plaintiff's replacement counsel, Ice Miller.[1]

**INTRODUCTION**

Emmis' first-choice counsel, Barnes & Thornburg, represented Emmis in both this action

and the companion arbitration proceeding against Walter Berger, until the firm's sudden

withdrawal last December.  By hiring Ice Miller as replacement counsel in this action, but not in

the arbitration proceeding, Emmis effectively concedes that Ice Miller has a conflict of interest

adverse to Berger's interests.[2]  Faced with a clear conflict requiring disqualification, Emmis

responds with a highly technical, but incorrect, argument that this Court cannot disqualify Ice

---

[1]      Rather than file a Response in Opposition to CBS Radio's Motion to Disqualify, Emmis filed a joint Motion to Dismiss and Motion to Strike, neither of which references a Federal Rule of Civil Procedure.  (Docket No. 54). Local Rule 7.1 provides, "Each motion shall be separate; alternative motions filed together shall each be named in the caption on the face."  Since the Local Rules do not provide for the filing of surreply briefs, CBS Radio incorporates its response to Emmis' joint motions in this Reply in Support of its Motion to Disqualify and submits that the briefing on the disqualification of Ice Miller is now complete.

[2]      See Affidavit of David O. Barrett, Exh. 1 to Emmis' Response to Motion to Disqualify, ¶ 12, Docket No. 55 ("Ice Miller is not representing Emmis in the arbitration Emmis filed against Berger which is currently stayed").

Miller because Berger, the aggrieved client, is not a party in this lawsuit, and CBS Radio lacks standing to move for disqualification.[3]

Emmis' argument ignores the many cases, including some of those cited by Emmis, which recognize that third parties, and indeed, even the Court, have standing to raise a conflict issue. Furthermore, to put this standing issue to rest and resolve any doubts regarding standing, Berger has concurrently moved to intervene in this proceeding for the limited purpose of joining in CBS Radio's Motion to Disqualify.

Emmis' other arguments are both inconsistent and disingenuous.[4] For instance, Emmis' argues, on the one hand, that Berger has no "dog in this fight," despite the fact that Emmis has accused Berger of breaching of his Employment Agreement, proof of which is a requisite element to establishing liability in both this action and the companion arbitration proceeding. At the same time, Emmis acknowledges that the outcome of this lawsuit could impact Berger, while incredibly suggesting that if CBS Radio were found liable for tortious interference (which necessarily would require a finding that Berger breached his contract), such an outcome somehow would be a good thing for Berger, a high-level officer of CBS Radio and a well-respected figure in the radio industry.

---

[3]     In fact, the only reason Berger is <u>not</u> a party to this lawsuit is an arbitration provision in the Employment Agreement negotiated by Ice Miller on Berger's behalf, which Emmis has invoked to commence an arbitration proceeding against Berger for breach of contract arising out of his resignation of employment with Emmis.

[4]     Before responding to these arguments, CBS Radio must first address the abrasive tone of Emmis' filings. Judges in this District have admonished the bar on civility in briefing. Nevertheless, Emmis' Response repeatedly resorts to unnecessary verbal attacks, such as "superficial," "employee [CBS Radio] pirated," "CBS Radio has not engaged in a 'careful and thoughtful analysis,'" "superficially," "CBS [Radio's] imprecise analysis," and "CBS [Radio] has failed to offer any admissible evidence, or cogent legal argument." (Emmis' Response to Motion to Disqualify, pp. 5-8, 13; <u>see also</u> Emmis' Response to CBS [Radio's] Motion to Stay, Docket No. 59, p. 1 ("having pirated Emmis' CFO and having sought to pirate Berger's very limited relationship with Ice Miller"); Emmis' Motion to Continue Settlement Conference, Docket No. 46, p. 1 ("CBS [Radio] has filed a baseless motion to disqualify Ice Miller")). CBS Radio will respond to Emmis' arguments on the merits, rather than engage in an <u>ad</u> <u>hominem</u> attack on Emmis itself.

Second, Emmis argues that the issues in this lawsuit are not substantially-related to Emmis' prior representation of Berger in the negotiation of his Employment Agreement, despite the fact that the Agreement is central to this lawsuit; indeed, it is the *only* exhibit Emmis chose to attach to its Complaint.  In a transparent effort to lessen the import of Berger's Employment Agreement to the issues in this case, Emmis for the first time now purports to recharacterize the Employment Agreement as two separate and distinct contracts, a "2002 Agreement" and a "2005 Renegotiated Agreement."  (Emmis' Response to Motion to Disqualify, Docket No. 55, p. 3). This characterization of the Employment Agreement is belied both by the plain language of the 2005 amendment and by Emmis' Complaint in this action.

Specifically, the February 7, 2005 letter agreement executed by Emmis and Berger, which is titled "Amendment to Employment Agreement," states that:

> This letter shall confirm our agreement to **amend** your employment agreement with Emmis Operating Company dated March 1, 2002 (the "**Agreement**"), upon the terms and subject to the conditions set forth in this letter (the "**Amendment**").
>
> ***
>
> **All of the terms and conditions set forth in the Agreement shall remain unchanged and in full force and effect unless specifically modified in this Amendment**.

(Exh. A to Complaint, Docket No. 1, pp. 1, 3-4; emphasis added).  The Amendment to Employment Agreement is never referred to as a "Renegotiated Agreement."

Moreover, nowhere in its Complaint does Emmis refer to the amendment as a distinct "2005 Renegotiated Agreement," but instead, alleges that:

> Berger was employed by Emmis as its Executive Vice President, Chief Financial Officer and Treasurer, pursuant to an executive employment agreement with Emmis dated March 1, 2002.  The initial term of that executive employment agreement commenced on March 1, 2002, and continued until February 28, 2006; the executive employment agreement was **amended** on February 7,

> 2005 to extend the term through February 28, 2009 (hereinafter, the "Term" shall refer to the term of the agreement beginning on March l, 2002 as extended through February 28, 2009.)  A copy of the executive employment agreement and the **amendment** are attached hereto as Exhibit A (together, the "**Executive Employment Agreement**").

(Complaint, ¶ 7; emphasis added).  The amendment to Berger's Employment Agreement cannot accurately be described as a separate "Renegotiated Agreement."  Rather, the amendment itself expressly provides that the unchanged terms and conditions of the Agreement remain in full force and effect – the very terms and conditions negotiated by Ice Miller on behalf of Berger, including the termination provisions, which are relevant to the issues in dispute in this action.

In a further attempt to avoid disqualification, Emmis inconsistently recasts the nature of Ice Miller's relationship with both Emmis and Berger.  In its Reply, Emmis claims that "Ice Miller has served as legal counsel for Emmis on **significant** legal matters since **at least 1999**." (Emmis' Response to Motion to Disqualify, p. 2, emphasis added; see also Affidavit of David O. Barrett, ¶ 4).  Yet, this representation is completely at odds with the letter from Martin Klaper of Ice Miller to Berger, dated **March 7, 2003**, which states that "Ice Miller has done a **minimal amount** of work for Emmis."  (Exh. A to Exh. 2 to Emmis' Response to Motion to Disqualify, p. 1; emphasis added).

At the same time it overstates its relationship with Ice Miller, Emmis attempts to downplay the work that Ice Miller performed on behalf of Berger, describing it as "limited to reviewing the draft of the employment agreement and finalizing the negotiations between the parties."  (Affidavit of Martin J. Klaper, ¶ 8, Exh. 2 to Emmis' Response to Motion to Disqualify).  By Klaper's own admission, his representation of Berger involved 10 hours of work over a span of 4 months.  (Affidavit of Martin J. Klaper, ¶ 8).  This cannot be described as minimal.  To the contrary, Klaper's negotiations with Emmis on behalf of Berger were extensive

and very effective.  (Affidavit of Walter Berger, ¶ 5, attached hereto as Exh. 1).  Perhaps this is why Emmis' work with Ice Miller went from "minimal" to "substantial" after 2003.

The final inconsistency in Emmis' argument against disqualification is the claimed import of having Ice Miller as its counsel of choice.  (Emmis' Response to Motion to Disqualify, p. 8). Despite the alleged long-standing relationship between Emmis and Ice Miller, Emmis initially retained Barnes & Thornburg to pursue its claims against CBS Radio and Berger, and only hired Ice Miller as substitute counsel in late December 2006, after the withdrawal of its first-choice firm.  CBS Radio's Motion to Disqualify cannot properly be characterized as a harassing attempt to separate Emmis from its counsel of choice.  Rather, Emmis caused the separation when it assented to the withdrawal of Barnes & Thornburg, and more importantly, generated the disqualification issue before this Court by hiring replacement counsel it knew had previously represented Berger – at Emmis' request, no less – in the negotiation of the Employment Agreement at the center of this dispute.

## ARGUMENT

### A.      CBS Radio Has Standing To Seek Disqualification.

Although research has not disclosed (and Emmis has failed to cite) any reported Indiana or Seventh Circuit decision addressing whether a third party has standing to move for disqualification, contrary to Emmis' assertion, there are many cases from other jurisdictions which recognize that a third party does have standing to raise a conflict issue and stand in privy to the interests of the aggrieved client.  See, e.g., Kevlik v. Goldstein, 724 F.2d 844, 847-848 (1st Cir. 1984) (holding that "disqualification may rightly be sought by opposing counsel even though he/she is not representing the aggrieved client"); Brown & Williamson Tobacco Corp. v. Daniel International Corp., 563 F.2d 671, 673 (5th Cir. 1977) ("Appellant has standing to seek disqualification even though it is not an aggrieved client"); United States v. Clarkson, 567 F.2d

270, 271 n. 1 (4th Cir. 1977) (member of bar obligated to call to court's attention "facts justifying a disqualification of counsel").[5]

Even if this Court were to find that CBS Radio lacks standing to move for disqualification, this Court can recognize "its own duty to examine the fairness and adequacy of the representation provided by the named plaintiff and his attorney once apprised of a potential or actual conflict of interest, regardless of who brings the conflict to the attention of the court." Deleo v. Swirsky, 2002 WL 989526 at *5 (N.D. Ill. 2002).   See also United States v. Fish, 34 F.3d 488, 492 (7th Cir. 1994) (holding that "[w]hen the defendant raises the issue or the trial judge otherwise knows or reasonably should know of the possibility of a conflict of interest, the judge must inquire adequately into the potential conflict").

In support of its argument that CBS Radio lacks standing, Emmis cites an unreported decision from a Magistrate Judge in the Northern District of Illinois, two criminal cases from the Second Circuit, and a decision from the Southern District of New York.  None of these decisions are binding; and more importantly, none are persuasive.  For example, in Thomas & Betts Corporation v. Panduit Corp., 1995 WL 319635 at *2 and n. 4 (N.D. Ill. 1995), the defendants sought to disqualify plaintiffs' counsel on the grounds of a conflict between plaintiffs and their counsel.  The court noted that plaintiffs waived all conflicts of interest and consented to the representation by their counsel.  In the case at bar, Ice Miller did not inform Berger of the conflict of interest, did not seek a waiver of the conflict from him, and denied Berger's demand for its withdrawal as counsel for Emmis.

---

[5]       See also In re Gopman, 531 F.2d 262, 265 (5th Cir. 1976) ("When an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized, but is in fact obligated to bring the problem to that court's attention"); Black v. State, 492 F. Supp. 848, 861 (W.D. Missouri 1980) (recognizing that "'the district defendants should be entitled to raise any apparent conflicts of interest which might undermine the validity of proceedings in this case"); Estates Theatres, Inc. v. Columbia Pictures Industries, Inc., 345 F. Supp. 93, 98 (S.D.N.Y. 1972) (finding that attorney is duty-bound to raise conflict issue).

Similarly, in <u>United States v. Cunningham</u>, 672 F.2d 1064, 1072-1073 (2d Cir. 1982), the court denied the government's motion to disqualify defense counsel based in part on its finding that the former client did not seek to have the attorney disqualified, but noted that "the government has a sufficient interest in preserving the integrity of a criminal proceeding in which one of its potential witnesses is a former client of the defendant's counsel to allow the government to raise the question."  In the case at bar, Berger, as the former client, demanded that Ice Miller withdraw from its representation of Emmis, yet Ice Miller refused to do so.

In <u>United States v. Rogers</u>, 9 F.3d 1025, 1028 (2d Cir. 1993), the government moved to disqualify the defendant's counsel because counsel had represented a co-conspirator in a civil lawsuit arising out of the same facts and the co-conspirator would be a key witness against the defendant.  The court held that even though defendant's counsel appeared on behalf of the employer rather than the co-conspirator himself at the deposition, the co-conspirator's "joinder in the motion to disqualify [defendant's counsel by the government] was sufficient to assert the adverse nature of his interest in the confidences he may have disclosed to [defendant's counsel]."  Thus, the court granted the government's motion to disqualify, even though the government was not the former client and the former client (<u>i.e.</u>, the co-conspirator's employer) did not join the motion, because the co-conspirator "should be considered a privy of the company."  <u>Rogers</u>, 9 F.3d at 1031.

Finally, <u>Raiola v. Union Bank of Switzerland, LLC</u>, 230 F.Supp.2d 355, 360-361 (S.D.N.Y. 2002), arose out of an arbitral award in a sex discrimination case, in which the court denied the plaintiff's argument that the panel improperly permitted defendant's counsel to cross-examine a witness whom defendant's counsel had represented "for only a short period of time in an SEC investigation before recognizing that a conflict existed and locating separate counsel for

[the witness]."  Unlike the facts of the present case, the court noted that the plaintiff was not in privy with the witness, and did not address whether the prior SEC investigation was in any way related to the sex discrimination claims.  <u>Raiola</u>, 230 F. Supp. at 361.

In the present case, CBS Radio has the right, as well as the obligation, to seek disqualification of Ice Miller.  Ice Miller has a clear conflict arising out of its prior representation of Berger; CBS Radio is in privy with Berger; and Berger has noted his vigorous objection, both verbally and in writing, to Ice Miller's representation of Emmis in this lawsuit.  Nonetheless, in an overabundance of caution, and to put to rest any doubts about the resolution of this issue, Berger, the aggrieved client, has moved to intervene in these proceedings for the limited purpose of joining in CBS Radio's Motion to Disqualify, which if granted, will render the standing issue moot.

**B.      Berger's Interests Are Materially Adverse To Emmis In This Lawsuit.**

Emmis quips that Berger "has no dog in this fight" (Emmis' Response to Motion to Disqualify, p. 4), and even more incredibly, claims that it would be in Berger's "best interest" if CBS were to lose this lawsuit because "there would be no likelihood of Emmis independently pursuing a claim against Berger" (<u>Id</u>., p. 7), despite the fact that Emmis already has instituted legal proceedings against Berger for breach of contract in connection with his resignation of employment from Emmis, which Emmis has taken no action to dismiss.

As noted in CBS Radio's Brief in Support of Motion to Disqualify (Docket No. 45, pp. 7-8), to prevail on its tortious interference claims, Emmis first must demonstrate that Berger breached his Employment Agreement, since establishing a breach of the underlying contract is a prerequisite to a finding of liability on Emmis' tortious interference claims.  See <u>Gatto v. St. Richard School, Inc.</u>, 774 N.E.2d 914 (Ind. Ct. App. 2002) (where plaintiff failed to establish

a breach of contract, plaintiff could not succeed on its claim of tortious interference with contract).   By retaining Ice Miller, Emmis has hired Berger's former counsel to establish that Berger breached the Employment Agreement which Ice Miller negotiated on his behalf and that Emmis is entitled to damages from his new employer, CBS Radio.   Emmis has indicated that it intends to elicit testimony from Berger regarding the alleged breach and anticipates that Berger "may testify regarding his employment contract with Emmis." (See Plaintiff Emmis Operating Company's Initial Disclosures, p. 1, attached as Exh. 1 to CBS Radio's Brief).  Thus, Emmis has placed Berger in the untenable position of being questioned by his former counsel – now acting on behalf of his adversary – regarding the very contract this same counsel negotiated on his behalf.   And, despite Emmis' cavalier assertions to the contrary, Emmis certainly will attempt to use any testimony elicited from Berger in this case against him, to the extent possible, in the companion arbitration proceeding.

Moreover, despite Emmis' illogical claim that Berger would be in a better position if CBS Radio were to lose this case, precisely the opposite is true.  If CBS Radio prevails in this action (as it certainly should), based in whole or in part on a determination that no breach of contract occurred, such a finding would likely be binding upon Emmis in the arbitration, and Emmis would be precluded from further pursuing its breach of contract claim against Berger in that proceeding.   Given these circumstances, it is simply inconceivable as to how Emmis' interests are not materially adverse to those of Berger.

Emmis argues that Ice Miller should not be disqualified because no confidences could possibly have been disclosed by Berger during the prior representation that would have any bearing on the present action.  Even though this Court cannot inquire into the actual confidences that Ice Miller received during the course of its representation of Berger, and Berger cannot and

should not be forced to divulge them, CBS Radio previously has identified many issues it would be reasonable to assume Berger would have discussed with his former counsel during the course of his contractual negotiations, including non-competition, Berger's "value" to Emmis (the loss of which Emmis purports to claim as an element of its damages), stock options (including whether Emmis would have the right to cancel vested options if Berger should leave the company), and termination of employment (including the circumstances under which Berger's employment relationship with Emmis could end, through resignation or otherwise) – all of which would be relevant to issues of liability and/or damages alleged in this lawsuit. (See CBS Radio's Brief, pp. 6-7). Further, it is not difficult to imagine that a client would discuss with his counsel the term, the termination, and potential breaches of a contract during contract negotiations.

In any event though, "[i]t is **irrelevant** whether [counsel] actually obtained such information and used it against his former client, or whether – if the lawyer is a firm rather than an individual practitioner – different people in the firm handled the two matters and scrupulously avoided discussing them." Analytica Inc. v. NPD Research, Inc., 708 F.2d 1263, 1266-67 (7th Cir. 1983) (emphasis added). Rather, the relevant inquiry is whether "the lawyer **could have** obtained confidential information in the first representation that would have been relevant in the second" Id. (emphasis added). Here, the answer to that question is a resounding yes.

Moreover, despite placing an unnecessary and ineffective "screen" around Martin Klaper to prevent him from speaking to anyone at Ice Miller about his representation of Berger, Ice Miller has completely disregarded the screen by eliciting an affidavit from Klaper detailing his representation of Berger. The fact that Klaper's representation of Berger occurred a few years

ago and before Berger resigned is simply irrelevant, because the passage of time has no bearing on whether a conflict of interest exists.

In short, Emmis is using Berger's former law firm in an attempt to establish that Berger breached the Employment Agreement that this same firm negotiated and that this breach damaged Emmis.  Issues of liability and damages in this lawsuit are virtually identical to the issues in Emmis' arbitration against Berger, where both Emmis and Ice Miller recognize a clear conflict of interest exists.  Neither CBS Radio nor Berger have conceded that Berger breached his Employment Agreement, nor is this breach a "given."  Instead, Emmis must establish this liability issue in this lawsuit.  Emmis has indicated an intent to depose Berger in an effort to make its case on liability and damages and to use Berger's former counsel to question him about the very Agreement it negotiated on his behalf.  As Emmis most certainly will attempt to use any adverse testimony against Berger in the companion arbitration, Berger's interests are impacted by this lawsuit and are materially adverse to Emmis.  Accordingly, his former firm cannot represent Emmis in this lawsuit.

**C.    Berger's Letter To Ice Miller Demanding Withdrawal And Ice Miller's Response Are Properly Before This Court.**

Under Fed.R.Civ.P. 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  In support of its Motion to Disqualify, CBS Radio submitted as exhibits the signed letter from Berger to Ice Miller, dated December 28, 2006, and the signed letter from Ice Miller to Berger, dated January 3, 2007.  In its Motion to Strike, Emmis alleges that Berger's letter is "unsworn" and "not verified" and that both letters are "not inadmissible [sic] form."  (Docket No. 54, ¶ 3).  None of these grounds are set forth in Rule 12(f).

Emmis does not claim that the exhibits are not true and accurate copies of the letters and does not deny that Ice Miller received Berger's letter or sent Berger its response.  These letters properly establish that Berger demanded Ice Miller to withdraw from representation of Emmis and that Ice Miller refused to do so.  As for the particular statements set forth in Berger's letter, Berger has submitted a sworn affidavit in connection with his Motion.

Last and difficult to ignore, Emmis moved to strike the letters even though Ice Miller expressly requested CBS Radio to disclose Berger's letter and Ice Miller's response if CBS Radio moved to disqualify Ice Miller in this litigation.  (Exh. 2 to CBS Radio's Motion to Disqualify, p. 2).  It would appear that Ice Miller's request was intended to form the grounds for a Motion to Strike to initiate a further round of briefing (and to allow Emmis the final say on the subject of disqualification); this Court should not allow Emmis to file any further briefs without first seeking leave of court.

## CONCLUSION

Ice Miller has a conflict of interest arising from its prior representation of Berger in the negotiation of the Employment Agreement at issue in this lawsuit.  Emmis attempts to avoid this obvious conflict by having Ice Miller appear only in this lawsuit against Berger's current employer, CBS Radio, and not in the companion arbitration against Berger himself.  Both proceedings involve Berger's Employment Agreement with Emmis, and both require Emmis to establish a breach of this Agreement and damages arising from such breach.  Berger demanded Ice Miller to withdraw as counsel for Emmis in this proceeding, as did CBS Radio.  Both are entitled to raise the issue of disqualification.

Given the real and substantial concern that Ice Miller can and will use confidences learned during the course of its prior representation of Berger to the detriment of Berger and

CBS Radio in this action, this Court should disqualify Ice Miller.   Such a ruling would cause little, if any, prejudice to Emmis, because Ice Miller was only recently retained after the withdrawal of Emmis' first-choice counsel, and with the exception of briefing relating to this motion, this case has been relatively inactive in the interim.

Accordingly, for all the foregoing reasons, as well as those set forth in CBS Radio's Brief, CBS Radio respectfully requests that this Court grant CBS Radio's Motion to Disqualify Ice Miller from representing Emmis; deny Emmis' Motion to Dismiss CBS' Motion To Disqualify and Emmis' Motion to Strike; grant CBS Radio its fees and costs associated with this motion; and, grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

LOCKE REYNOLDS LLP


By: _____*s/ Thomas L. Davis*_____
     Thomas L. Davis, #4423-49
     James Dimos, #11178-49
     Joel E. Tragesser, #21414-29
     Attorneys for Defendant, CBS Radio Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of February, 2007, a copy of the foregoing was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

**G. Daniel Kelley**
**Michael A. Blickman**
**Scott D. Matthews**
ICE MILLER
daniel.kelley@icemiller.com
michael.blickman@icemiller.com
scott.matthews@icemiller.com



_____
                                        *s/ Thomas L. Davis*



LOCKE REYNOLDS LLP
201 North Illinois Street, Suite 1000
P.O. Box 44961
Indianapolis, IN  46244-0961
Phone: 317-237-3800
Fax:    317-237-3900
tdavis@locke.com
jdimos@locke.com
jtragesser@locke.com

819408_1